UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Britanny Carr,

Kurt Hartwell, and

Matthew Gibbons,

Plaintiffs,

V.                                                    Civil Action No.

WHDH-TV, INC.,

Defendant.

COMPLAINT

JURY TRIAL DEMANDED

PARTIES

1.      Plaintiff Britanny Carr ("Plaintiff") is, upon information and belief, an

individual residing in the Commonwealth of Massachusetts. Plaintiff's address is 81

Birch Street, Unit 205, Abington, MA 02351.

1

2.      Plaintiff Kurt Hartwell ("Plaintiff") is, upon information and belief, an individual residing in the Commonwealth of Massachusetts. Plaintiff's address is 62 Parkway Crescent, Milton, MA 02186.

3.      Plaintiff Matthew Gibbons ("Plaintiff") is, upon information and belief, an individual residing in the Commonwealth of Massachusetts. Plaintiff's address is 8 Ayer Road, Shirley, MA 01464.

4.      Upon information and belief, Defendant WHDH-TV Inc. ("Defendant") is and has been a Massachusetts business entity with its principal place of business at 7 Bulfinch Place, Boston, County of Suffolk, Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, 211, and 215, and other applicable federal laws.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2), in that Defendant resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

7.      On or about January 25, 2026, employees, including Plaintiffs, were directed by Defendant to report for storm coverage on a Sunday, which was a scheduled day off for some employees.

8.      Employees were instructed by Defendant to gear up and travel to specific locations, including hotels, as designated by Defendant, in preparation for storm coverage the following day.

9.      Some employees, including Plaintiffs, were told by Defendant not to record the hours worked on Sunday, January 25, 2026, on their timesheets.

10.     At least one employee reported feeling intimidated into omitting the hours from their timesheet because timesheet approval was required by management.

11.     Another employee was told by Defendant that the hours worked on Sunday, January 25, 2026, were not considered billable because the purpose was to be in place for work on Monday.

12.     At least one non-union employee was also told by Defendant that they would not be paid for work performed on Sunday, January 25, 2026.

13.     Employees, including Plaintiffs, were concerned about not being paid for work performed for Defendant on January 25, 2026.

14.     On or about February 19, 2026, a meeting was held between individuals working with the union regarding complaints of unpaid work on January 25, 2026.

15.     During the meeting, individuals working with the union identified at least two employees who worked on Sunday, January 25, 2026, and were not paid.

16.     Defendant's management stated that hotel stays were offered as a courtesy for the benefit of employees and implied that such arrangements did not require payment for the time spent.

3

17.     Employees, including Plaintiff, disputed the characterization of hotel stays as a courtesy and asserted that they were directed to perform work, including transporting gear and preparing for coverage.

18.     Defendant's management stated, "we don't pay people to sleep," in response to requests for payment for time spent at hotels in preparation for storm coverage.

19.     Employees, including Plaintiffs, performed work such as loading gear, transporting equipment, and preparing for storm coverage at Defendant's direction on January 25, 2026.

20.     Some employees did not submit timesheets for the hours worked on January 25, 2026, due to fear of denial and nonpayment by Defendant.

21.     Employees who attempted to record time for travel to hotels on their day off were told by Defendant that the hotel was a courtesy and that travel time would not be paid.

22.     Defendant did not provide advance notice or explanation to employees or the union regarding the change in pay practices for travel days and hotel stays.

23.     Employees lost income and were not paid for meals associated with hotel travel on January 25, 2026, and February 22, 2026.

24.     Defendant denied meal reimbursements to employees, including Plaintiff, for work performed during storm coverage, sometimes citing ineligibility or a requirement for receipts.

4

25.    Defendant's denials of meal reimbursements were inconsistent, with some employees being approved and others denied for similar circumstances.

26.    Since 2011, Defendant and the union had agreed to a per diem system for meals during storm coverage, eliminating the need for receipts.

27.    After the storms in January and February 2026, Defendant began demanding receipts for meal reimbursements, contrary to past practice.

28.    Defendant made individualized changes to per diem meal payments, with amounts varying by less than five dollars, without explanation.

29.    Some employees felt that the individualized changes to per diem payments were retaliatory.

30.    Employees, including Plaintiffs, were required to perform prep work such as grabbing LiveU equipment, getting gear and cars to hotels, coordinating with the desk, and working in preparation for storm coverage.

31.    Employees, including Plaintiffs, worked extended hours during storm coverage, including shifts of up to 16 hours in blizzard conditions.

32.    Defendant disputed paying employees for additional hours worked beyond their regular shifts during storm coverage.

33.    Defendant's management communicated to employees that even though they geared up and drove company vehicles, such activities were not considered hours worked.

34.     Employees, including Plaintiffs, were instructed to document all times worked and communications with management regarding pay and timesheets.

35.     Some employees, including Plaintiffs, were questioned by Defendant's management about the specific work performed on Sunday, January 25, 2026, and were awaiting approval or denial of pay for that day.

36.     Defendant did not notify the union before implementing changes to pay practices for travel days and hotel stays.

37.     A grievance was filed regarding Defendant's unilateral change in pay practices, but arbitration could not proceed due to the termination of the collective bargaining agreement.

38.     Employees, including Plaintiffs, contacted the union regarding nonpayment for work performed, and the union informed Defendant that employees should be paid, but Defendant refused.

39.     Defendant did not communicate any written announcement or explanation to employees regarding the change in pay practices.

40.     Employees, including Plaintiffs, were not paid for travel days to hotels on January 25, 2026, and February 22, 2026, despite past practice of payment for such days.

41.     Employees, including Plaintiffs, were not paid for meals associated with hotel stays during storm coverage, despite past practice and contractual provisions.

6

42. Defendant's actions resulted in loss of income to employees, including Plaintiffs.

## CAUSES OF ACTION
### COUNT I – VIOLATION OF 29 U.S.C. § 206

43. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

44. Defendant employed Plaintiffs and required Plaintiffs to perform work, including but not limited to travel, preparation, and storm coverage assignments, for which Plaintiffs were not paid at least the minimum wage required by federal law. Defendant instructed Plaintiff and similarly situated employees not to record certain hours worked, and Plaintiff was intimidated from recording time due to management approval requirements. As a result, Plaintiffs were not paid for all hours worked, including time spent performing work at Defendant's direction on days off and during storm coverage assignments.

45. Defendant's failure to pay Plaintiffs at least the minimum wage for all hours worked constitutes a violation of 29 U.S.C. § 206.

46. As a direct and proximate result of Defendant's conduct, Plaintiffs have been damaged in an amount to be determined at trial.

### COUNT II – VIOLATION OF 29 U.S.C. § 207

47. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

7

48.     Defendant employed Plaintiffs and required Plaintiffs to work in excess of forty hours per week, including travel and storm coverage assignments, without paying overtime compensation as required by federal law. Plaintiffs and similarly situated employees worked extended hours, including shifts up to 16 hours in blizzard conditions, and were not paid overtime for hours worked in excess of forty per week.

49.     Defendant failed to pay Plaintiffs overtime compensation at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of forty, in violation of 29 U.S.C. § 207.

50.     As a direct and proximate result of Defendant's conduct, Plaintiffs have been damaged in an amount to be determined at trial.

### COUNT III – VIOLATION OF 29 U.S.C. § 215(a)(3)

51.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

52.     Defendant retaliated against Plaintiff and similarly situated employees for asserting their rights under the Fair Labor Standards Act by intimidating employees into omitting hours from timesheets, arbitrarily denying pay and meal reimbursements, and making individualized changes to per diem payments without explanation. Defendant's actions were taken in response to complaints and requests for payment for all hours worked and for meal reimbursements, and resulted in disparate and retaliatory treatment.

53.     Defendant's conduct constitutes a violation of 29 U.S.C. § 215(a)(3).

8

54.     As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged in an amount to be determined at trial.

### COUNT IV – VIOLATION OF 29 U.S.C. § 215(a)(5)

55.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

56.     Defendant failed to make, keep, and preserve accurate records of the hours worked by Plaintiffs as required by law, including by instructing Plaintiffs and similarly situated employees not to record certain hours worked and by intimidating employees into omitting time from their timesheets. Defendant's actions impeded Plaintiffs' ability to receive proper compensation for all hours worked.

57.     Defendant's conduct constitutes a violation of 29 U.S.C. § 215(a)(5).

58.     As a direct and proximate result of Defendant's conduct, Plaintiffs have been damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Britanny Carr, Kurt Hartwell, and Matthew Gibbons respectfully request that this Court enter judgment in their favor and against WHDH-TV Inc. as follows:

1.     Declare that WHDH-TV Inc. violated the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, and 215, by failing to pay minimum wage, failing to pay overtime compensation, retaliating against employees for asserting their rights, and failing to

9

maintain accurate records of hours worked by Britanny Carr, Kurt Hartwell, and Matthew Gibbons.

2.      Award Britanny Carr, Kurt Hartwell, and Matthew Gibbons compensatory damages against WHDH-TV Inc., including but not limited to unpaid minimum wages, unpaid overtime compensation, lost income, and unreimbursed meal and travel expenses, in an amount to be determined at trial.

3.      Award Britanny Carr, Kurt Hartwell, and Matthew Gibbons liquidated damages against WHDH-TV as provided by 29 U.S.C. § 216(b) for violations of the Fair Labor Standards Act.

4.      Award pre-judgment and post-judgment interest as permitted by law.

5.      Award Britanny Carr, Kurt Hartwell, and Matthew Gibbons their reasonable attorneys' fees and costs of suit, including expert witness fees where authorized, pursuant to 29 U.S.C. § 216(b) and other applicable law.

6.      Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Defendants Britanny Carr, Kurt Hartwell,
and Matthew Gibbons

By their attorney,
/s/ Rosa Lee Klaneski

Rosa Lee Klaneski, Esq.
BBO No. 715341
1380 Main Street, #410
Springfield, MA 01103

10

Tel: 413-200-7399
Email: rk@klaneskilaw.com

Dated: July 7, 2026