**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| BRITTANY CARR, KURT HARTWELL, and MATTHEW GIBBONS,<br><br>Plaintiffs,<br><br>v.<br><br>WHDH-TV, INC.,<br><br>Defendant. | ) | Civil Action No. 26-CV-13117-AK |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Before the Court is Defendant WHDH-TV, Inc.'s, Motion to Dismiss for Failure to State a Claim. [Dkt. 8]. Plaintiffs Brittany Carr, Kurt Harwell, and Matthew Gibbons, who are employees of Defendant, bring this action under the Fair Labor Standards Act ("FLSA") alleging that Defendant violated certain minimum wage, overtime, retaliation, and recordkeeping requirements in connection with work performed during a winter storm on January 25 and February 22, 2026. [Dkt. 1]. Defendant moves to dismiss, arguing that the dispute implicates Plaintiffs' collective bargaining agreement ("CBA") and therefore must proceed in arbitration pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), and that the Complaint fails to state a claim under the FLSA. [Dkt. 9]. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, documents fairly incorporated by reference in Complaint, and documents subject to judicial notice. See

Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020) (quoting Lydon v. Loc. 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014)). The Court assumes these facts are true on reviewing a motion to dismiss. See id.

**A. Factual Background**

Defendant WHDH-TV, Inc., is an independent television station based in Boston, Massachusetts. Between 2021 and 2025, Defendant maintained a CBA with the Local 1228 of the International Brotherhood of Electrical Workers ("IBEW"), which covered recording, broadcast, and television technicians and camerapersons. [See Dkt. 9-1]. Under this agreement, Defendant agreed to a per-diem system for reimbursing meals during storm coverage, eliminating the need for employees to submit receipts. [Dkt. 1 ¶ 26].

At all times relevant to this action, Plaintiffs were WHDH-TV employees and members of IBEW Local 1228. [Id. ¶ 38; 44]. On Sunday, January 25, 2026, Defendant directed Plaintiffs to report for storm coverage, which was a scheduled day off for some employees. [Id. ¶ 7]. Defendant instructed Plaintiffs to load and transport live streaming equipment and cameras, and travel to specific locations, including hotels, in preparation for storm coverage the following day. [Id. ¶¶ 7-8, 19]. Plaintiffs worked extended hours in blizzard conditions to complete the work, including shifts of up to sixteen hours. [Id. ¶ 31].

Following the storm, Defendant allegedly instructed Plaintiffs not to record the hours worked that day because the purpose of the work was to prepare for the following Monday. [Id. ¶¶ 9, 11]. Defendant also refused to pay for Plaintiffs' hotels, with management allegedly explaining that, despite the CBA, hotel stays were offered as a courtesy for the benefit of employees and stating, "we don't pay people to sleep." [Id. ¶¶ 16, 18]. As a result, Plaintiffs were not paid for time performing these duties, nor were they paid or reimbursed for meals and hotel travel. [Id. ¶ 24].

After this storm coverage incident, Defendant allegedly began demanding receipts from employees for meal reimbursements, contrary to prior practice and the CBA. [Id. ¶ 27]. Defendant also adjusted individual per-diem meal payments without explanation. [Id. ¶ 28]. Some employees believed that these changes were in retaliation to the storm coverage incident. [Id. ¶ 29]. A grievance was filed regarding these changes in payment practices, but arbitration ultimately did not proceed because the CBA expired in July 2025. [Id. ¶ 37].

**B. Collective Bargaining Agreement Provisions**

Several provisions of the CBA are relevant to the present dispute. First, Section 5.02(c) sets forth Defendant's obligations regarding severe weather conditions. [Dkt. 9-1 § 5.02(c)]. It provides that if Defendant "requests an Employee to stay in the city overnight in order to be on hand to cover any watch or assignment, [it] shall provide hotel accommodations, meals, and storage for the Employee's car at the Employer's expense." [Id.].

Sections 5.10 and 6.04 govern travel time and provide that employees must receive at least eight hours of pay for assignments requiring an overnight stay outside their applicable home location. This includes "[a]ll time spent driving a car." [Id. § 5.10(a)]. Section 5.11 and 6.05 govern travel expenses and provide that Defendant must reimburse employees for "all reasonable and necessary travelling expenses . . . when travel . . is required or authorized by [Defendant]." [Id. § 5.11].

Article III sets forth grievance and arbitration procedures for resolving disputes arising from the CBA. It defines a grievance as a "complaint[], dispute[] or question[] as to the interpretation, application, or performance of this Agreement." [Id. § 3.01]. If the union believes the CBA has been violated, misinterpreted, or misapplied, the union must first file a grievance. [See id.]. If the outcome of the grievance process is unsatisfactory to the union, the CBA authorizes the union to bring that dispute to arbitration with the American Arbitration

Association or any other mutually acceptable arbitrator. [Id. § 3.02].

### C. Procedural History

Plaintiffs filed a Complaint with this Court on July 7, 2026. [Dkt. 1]. On September 8, 2026, Defendant moved to dismiss for failure to state a claim. [Dkt. 8]. Plaintiffs filed an Opposition on September 22, 2026 [Dkt. 10], to which Defendant did not file a Reply.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). The Court may, "for reasons other than those advanced by Defendants, . . . dismiss the claims asserted against the individual defendants." S.S. by S.Y. v. City of Springfield, 146 F. Supp. 3d 414, 426 (D. Mass. 2015).

## III. DISCUSSION

Defendant moves to dismiss all claims in the Complaint. First, Defendant argues that Plaintiffs' claims arise out of the CBA and, therefore, they must first bring the dispute to an arbitrator pursuant to Section 301 of the LMRA. Second, Defendant argues that Plaintiffs fail to allege that they performed "work" within the meaning of the FLSA, and that Plaintiffs fail to state the required elements of their minimum-wage and overtime claims. As explained below, the Court finds that exhaustion is not required and that Plaintiffs adequately plead all their claims except for Count 4 (recordkeeping), for which the FLSA does not provide a private right of action.

### A. Exhaustion under Section 301 of the LMRA

First, Defendant argues that Plaintiffs' claims are barred by Section 301 of the LMRA because Plaintiffs' claims arise out of, and require interpretation of, the CBA. As explained by the Supreme Court, "[a]n employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act." Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., 451 U.S. 679, 681 (1981) (citing Republic Steel Corp v. Maddox, 379 U.S. 650, 652-53 (1965)). This includes suits brought directly under the CBA, as well as claims that require the court to interpret the CBA even if they allege violations of another federal or state law, such as the FLSA. See Loc. 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co., 369 U.S. 95, 104 (1962). However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). Disputes that "ultimately concerns not the application or

interpretation of any CBA, but the meaning of a federal statute," are not barred. Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78-79 (1998).

To determine if a dispute requires interpretation or application of a CBA, courts look to the language of the CBA's arbitration provision. A "very general" arbitration provision covering all matters under dispute without explicit incorporation of the statutory requirement does not meet that standard. See Wright, 525 U.S. at 72, 80-81 (finding exhaustion unnecessary where CBA's arbitration provision covered all "matters affecting wages, hours, and other terms and conditions of employment"); see also O'Brien v. Town of Agawam, 350 F.3d 279, 285-86 (1st Cir. 2003) (same for arbitration provision reaching only "grievances" but containing "[n]ot a single reference" to statutory claims); Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 52 (1st Cir. 2013) (same for arbitration provision covering "any dispute concerning or arising out of the terms and/or conditions of [the CBA]"). Instead, the CBA must contain a "clear and unmistakable waiver" of the employees' right to a judicial forum. Wright, 525 U.S. at 80. A valid waiver requires "something closer to specific enumeration of the statutory claims to be arbitrated." Manning, 725 F.3d at 52; see, e.g., 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 252, 272 (2009) (noting that CBA arbitration provision was "sufficiently explicit" where it expressly mentioned "claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act" and related state laws).

Here, the CBA does not contain a "clear and unmistakable" waiver of a lawsuit under the FLSA. The CBA makes no mention of the FLSA (or any other federal statute), instead broadly subjecting "[a]ll complaints, disputes or questions as to the interpretation, application, or performance of [the CBA]" to arbitration." [Dkt. 9-1 § 3.01]; see Lemieux v. City of Holyoke, 740 F. Supp. 2d 246, 259 (D. Mass. 2010) ("Here, the purported waiver fails—either by

reference to 'federal statutory claims' in general or to the FLSA in particular—to clearly and unmistakably waive the FLSA's overtime provisions."). Moreover, while the Complaint does make reference to the fact that Defendant allegedly violated the terms of the CBA by failing to abide by the per-diem meals requirement, the substance of Plaintiff's FLSA claims are based not on the CBA's terms but the minimum-wage, overtime, retaliation, and recordkeeping requirements of the statute itself. Cf. Cameron v. Idearc Media Corp., No. 08-CV-12010, 2011 WL 4054864, at *8 (D. Mass. Sep. 9, 2011), aff'd, 685 F.3d 44 (1st Cir. 2012) (dismissing ADEA claim under Section 301 of the LMRA where "[t]he majority of the evidence adduced by the Plaintiffs in support of their ADEA claim . . . is evidence relating to the terms of the CBA," and "[a]s such, resolution of the Plaintiff's claim is dependent to a large degree on interpretation of the CBA itself"). As a result, the Court need not refer to or interpret the CBA's terms to resolve Plaintiffs' FLSA claims. Accordingly, Plaintiffs are not barred by Section 301's exhaustion requirement.

### B. Failure to State a Claim

Defendant next moves to dismiss the Complaint because Plaintiffs fail on the merits to adequately plead a FLSA claim. As explained below, the Court finds that Plaintiffs provide sufficient factual allegations to support Counts 1 to 3 (minimum-wage, overtime, and retaliation), but the FLSA does not provide a private right of action for their recordkeeping claim, so Count 4 must be dismissed.

#### 1. Compensable Work

Defendant first contends that all claims should be dismissed because the Complaint fails to adequately allege that Plaintiffs performed compensable work as defined in the FLSA. Specifically, Defendant cites the Portal-to-Portal Act to argue that Plaintiffs' allegations of loading and transporting gear, travelling to hotels, and "coordinating with the desk" do not

qualify as compensable work. [Dkts. 1 ¶¶ 17, 19, 30; 9 at 7].

The Supreme Court has interpreted "work" under the FLSA as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123, 321 U.S. 590, 598 (1944). In 1947, Congress passed the Portal-to-Portal Act, 29 U.S.C. §§ 251-262, which amended the FLSA to limit the types of work that qualify as compensable. See Pruell v. Caritas Christi, 678 F.3d 10, 14 (1st Cir. 2012). As relevant here, the Act excludes "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" and "activities which are preliminary to or postliminary to said principal activity or activities," but only if those activities "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity." 29 U.S.C. § 254(a). In simpler terms, travel and preparation/close-out tasks that occur outside of work hours are non-compensable, where work hours are determined by the first and last "principal activity" that an employee conducts. See id.; Sandifer v. U.S. Steel Corp., 571 U.S. 220, 226 (2014) (explaining that the Portal-to-Portal Act did not alter the FLSA's "continuous workday rule," which provides that once an employee begins their first principal activity of the day, the clock runs continuously, and travel or waiting time during the workday is compensable).

Whether a given activity constitutes a "principal activity" within the meaning of the Portal-to-Portal Act is a question of law. See Ballou v. General Elec. Co., 433 F.2d 109, 111 (1st Cir. 1970), cert. denied, 401 U.S. 1009 (1971). The statute provides no definition of "principal activity," but the Department of Labor has published administrative interpretations. See Dooley

v. Liberty Mut. Ins. Co., 307 F. Supp. 2d 234, 242 (D. Mass. 2004) (citing 29 C.F.R. § 790.8). The regulations state that "Congress intended the words 'principal activities' to be construed liberally . . . to include any work of consequence performed for an employer, no matter when the work is performed." 29 C.F.R. § 790.8(a) (internal citations omitted). As such, "principal activities" includes "such activities as are indispensable to the performance of productive work." Id. "Whether a particular function is a principal activity may be determined by deciding whether the task is 'performed as part of the regular work of the employees in the ordinary course of business.'" Dooley, 307 F. Supp. 2d at 242 (quoting Dunlop v. City Elec., Inc., 527 F.2d 394, 401 (5th Cir. 1976)).

Courts have generally found that transporting equipment to and from work sites is compensable. In Wirtz v. Gilbert, 267 F. Supp. 69 (D.R.I. 1967), for example, the District of Rhode Island found work to be compensable where an employee was required to drive a truck to transport other workers and necessary equipment to and from a survey site. Id. at 71-72 (quoting Steiner v. Mitchell, 350 U.S. 247, 255 (1956)); see also Steiner, 350 U.S. at 248, 256 (finding compensable time where battery plant workers were compelled to change clothes and shower as part of work); 29 C.F.R. § 790.7(d) (explaining that work is compensable where a logger carries "a portable power saw or other heavy equipment . . . on his trip into the woods to the cutting area" because "the walking, riding, or traveling is not segregable from the simultaneous performance of his assigned work"). The court explained that "[w]ithout such travel, said surveys could not have been made by the defendants" because the trucks carried "men and necessary equipment." Wirtz, 267 F. Supp. at 71-72. Thus, the court concluded that such work was "an integral part of and indispensable to their principal activities." Id. at 72.

The Court finds the present facts to be substantially similar to those found to constitute

compensable time in Wirtz. Plaintiffs allege that Defendant directed them to transport live streaming equipment, cameras, and other gear to work sites in preparation for storm coverage the following day. Not only were these actions directed by Defendant, but the act of transporting equipment and setting up for coverage is a regular, work-related task that is essential to enabling Defendant to carry out their television broadcasting projects. As such, Plaintiffs' time spent transporting equipment constituted a compensable "principal activity" under the FLSA. And as such, any additional work-related tasks completed by Plaintiffs between the first and final gear transportation of the day—such as travelling to hotels or "coordinating with the desk"—is also compensable work. Accordingly, Plaintiffs have adequately pleaded that they performed compensable work within the meaning of the FLSA.

**2. Minimum Wage (Count 1)**

Defendant next argues that the Complaint fails to adequately plead Count 1, i.e., a violation of the FLSA's minimum wage requirements. In Count 1, Plaintiffs allege that Defendant required them to perform work during the storm coverage assignment without paying at least the minimum wage required under 29 U.S.C. § 206. Specifically, they contend that they were paid $0 for any of the hours worked. Defendant argues that this claim should be dismissed because Plaintiffs fail to allege that Defendant paid them less than the federal minimum wage. Instead, according to Defendant, if Plaintiffs' total weekly wages are divided by the total weekly hours worked, then the average hourly wage would be greater than the minimum wage.

Courts have taken two different approaches to analyzing claims for failure to pay the minimum wage based on non-payment of wages for certain hours. The weekly average wage calculation method proposed by Defendant stems from the Second Circuit's decision in United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487 (2d Cir. 1960). By contrast, under Plaintiffs' approach, which has been adopted by at least two courts in this district, courts analyze

the claims on an hour-by-hour basis, finding that non-payment for each hour violates minimum-wage laws because it effectively constitutes a wage of $0 for that hour. See Norceide v. Cambridge Health All., 814 F. Supp. 2d 17, 24-26 (D. Mass. 2011); Cruz v. Bos. Litig. Sols., No. 13-CV-11127, 2016 WL 3568254, at *11 (D. Mass. May 24, 2016). "The First Circuit . . . has yet to address whether to use the hour-by-hour or the Klinghoffer weekly average measure for evaluating minimum wage law compliance." Norceide, 814 F. Supp. 2d at 22-23.

Given that Plaintiffs' overtime and retaliation claims will be allowed to proceed, the Court declines to dismiss Plaintiffs' minimum-wage claim at this stage. Defendant's challenge turns on the calculation method for assessing hourly wage, an issue for which the law in this circuit is not clearly and unambiguously settled. The Court is not persuaded that Plaintiffs' claims are foreclosed as a matter of law at the pleading stage and declines to resolve that issue now. Moreover, because of the similarity between each of Plaintiffs' FLSA claims, discovery concerning the claims will likely overlap and may give rise to additional facts bearing on whether Defendant paid Plaintiffs below the minimum wage, regardless of the applicable calculation method. Cf. Pruell, 678 F.3d at 15 (explaining that "some latitude has to be allowed where a claim looks plausible based on what is known" because "how [an employee's] pay was computed may depend on records they do not have"). Defendant may renew its arguments regarding Klinghoffer at summary judgment, following development of the factual record.

**3. Overtime (Count 2)**

In Count 2, Plaintiffs allege that Defendant failed to pay overtime compensation for the storm coverage assignments in violation of 29 U.S.C. § 207. They contend that Plaintiffs worked shifts up to sixteen hours over a weekend and in blizzard conditions, and they were not paid overtime for any of these hours. Defendant moves to dismiss, arguing that Plaintiffs fail to specify the day or workweek that they worked overtime, and as a result, it is possible that they

worked less than forty hours even after accounting for the additional sixteen hours of storm coverage.

In Manning, the First Circuit explained that allegations that employees were "regularly scheduled" for forty-hour weeks, coupled with allegations that employer practices regularly required them to perform uncompensated work before, after, and during shifts "support[ed] the reasonable inference" that the employees exceeded forty hours in a given week, without the need to plead precise weekly totals. 725 F.3d at 46-47. The court explained that a plaintiff need not provide "a detailed list of each and every activity the plaintiffs and their fellows performed without compensation," explaining that "[w]ork is work, after all." Id. at 46.

Here, Plaintiffs allege that they work regular shifts, and that Defendant required them to work storm-coverage shifts up to sixteen hours in blizzard conditions on at least one weekend (Sunday), and directed pre-shift preparation and travel that was later uncompensated. These allegations are sufficient to support the reasonable inference that Defendant required Plaintiffs to work overtime beyond their regular forty-hour shift on the dates alleged. See Perez v. Prime Steak House Rest. Corp., 939 F. Supp. 2d 132, 141 (D.P.R. 2013) (sustaining FLSA overtime claim where plaintiffs alleged a general schedule plus two to three daily hours of uncompensated preparation work, which constituted "an estimate of the hours worked and a general idea of the type of work performed" even though exact overtime totals were not pleaded). Accordingly, Plaintiffs have adequately pleaded Count 3.

**4. Recordkeeping (Count 4)**

Finally, in Count 4, Plaintiffs argue that Defendant failed to make, keep, and preserve accurate records of the hours worked by Plaintiffs in violation of 29 U.S.C. § 215(a)(5). However, "authority to enforce the FLSA's recordkeeping requirements is located solely with the Secretary of Labor." Bastille v. Me. Pub. Emp. Ret. Sys., No. 16-CV-31, 2016 WL 4250256, at

*4 (D. Me. Aug. 10, 2016) (citing 29 U.S.C. § 217). "The FLSA does not authorize an employee like [Plaintiff] to bring a private action against her employer for a failure to adhere to the statute's recordkeeping requirements." Id. (quoting Elwell v. Univ. Hosp. Home Care Servs., 276 F.3d 832, 843 (6th Cir. 2002)). Accordingly, because the FLSA does not empower Plaintiffs to bring a private action for a recordkeeping violation, Count 4 must be dismissed.

## IV. CONCLUSION

Accordingly, Defendant's [8] Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count 4 (recordkeeping) is dismissed, while Count 1 (minimum wage), Count 2 (overtime), and Count 3 (retaliation) remain. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant is **DIRECTED** to file a responsive pleading within **fourteen (14) calendar days** of this Order.

**SO ORDERED.**

Dated: October 28, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge